(No. 91-CC-1525-)

RUDOLPH LUCIEN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 2, 1993.*

*Order on petition for rehearing filed January 12, 1994.*

RUDOLPH LUCIEN, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (CHRISTO-PHER K. WELLS, Assistant Attorney General, of counsel), for Respondent.

OPINION

FREDERICK, J.

Claimant, Rudolph Lucien, an inmate with the Illinois Department of Corrections, seeks damages against the Respondent, State of Illinois, in the amount of $558.81 alleged by Claimant to be the value of personal property lost by Claimant through alleged fault or neglect of the Respondent.

Claimant's complaint alleges that on May 4, 1990, a large volume of personal property belonging to Claimant was confiscated by correctional officers. Claimant contends that although some of his property has been returned, a

large amount of the property with an alleged value of $558.81 has not been returned.

The complaint filed December 5, 1990, alleges that the property in question was removed by correctional officers from his cell. The complaint further alleges that three months later Claimant was transferred from Pontiac to Menard where he has been continuously incarcerated in the segregation unit. At the time of the filing of the complaint, Claimant asserts that certain items of his personal property described in the complaint and listed in the bill of particulars were "lost or stolen" while in the possession of the Respondent.

A rather substantial number of documents were submitted by way of a departmental report. The departmental report indicates that Claimant filed grievances with the Administrative Review Board on August 13 and August 22, 1990, with regard to his claims of lost personal property stemming from his transfer to Menard Correctional Center from Pontiac Correctional Center on August 8, 1990. The Administrative Review Board, after a review of information from Pontiac Correctional Center and Menard Correctional Center, concluded that the Claimant's property was appropriately transferred and arrived at Menard Correctional Center with several specific exceptions being: one scarf, two pair of winter gloves, one white gold cross with matching chain, food items, and 20 envelopes. It was noted that the Administrative Review Board was unable to verify the Claimant's possession of the excepted items, and there was no verification of quantity with respect to the food items which were consumable.

Subsequently, in a letter from Howard A. Peters, the Warden of the Pontiac Correctional Center to Rick A. Dunbar, it appears with respect to the "silver tone cross on a chain" that there was no "Jewelry Retention Statement"

on file at Pontiac for Claimant on either a silver chain with cross or a black cross. As to "tapes," Warden Peters reports that only 22 cassette tapes were removed from the possession of Claimant on May 20, 1990, and the 22 tapes were returned to the Claimant on June 20, 1990, and were transferred to Menard on August 8, 1990.

At the hearing in this cause, Claimant elected to make narrative statements regarding his claim. Claimant made reference to the departmental report and offered exhibits which Claimant contended disputed the statements of Warden Peters in his letter to Rick A. Dunbar of January 11, 1991.

First, Claimant submitted Claimant's Exhibit 1 consisting of three pages. The first page was a disciplinary report reflecting that the officer found what he believed to be unauthorized property which he removed from Claimant's cell (#818) consisting of one black pullover sweatshirt, one black zip-up hooded sweatshirt, one black Nike nylon pants, one pair of black gloves, three black stocking caps, one black scarf, and one navy blue pillowcase which he, in turn, turned over to his shift commander. The second page of the exhibit was a memo offered by Claimant to the adjustment committee. The third page was the adjustment committee's summary dated May 9, 1990, reflecting that the institutional adjustment committee read the disciplinary report and Claimant's written statement. The adjustment committee's summary reflects that the Claimant had no receipt for the unauthorized clothing found in his cell, and that Claimant requested that the institution provide him with receipts. The summary disposition reflects that the institutional adjustment committee found that Claimant had unauthorized property in his cell and that the matter was placed under investigation by Internal Affairs. Exhibit 1 in three pages was admitted into

evidence as Claimant's attempt to demonstrate that property, a portion of which was included in the complaint at bar, was in fact, taken from his person by Respondent's agents on May 4, 1990. Claimant contended on the same date (May 4, 1990), an additional item that was seized from his cell (Cell #818) was the silver-tone chain mentioned in Warden Peters' letter of January 11, 1991.

Claimant contended that Warden Peters' letter of January 11, 1991, misstated the facts in relation to the requirement that "Jewelry Retention Statements" were required for jewelry owned by inmates at the Pontiac Correctional facility. Claimant makes reference in his own written statement to the Pontiac disciplinary report as evidence that he did not make the "craft" items which Warden Peters speculated may have been made by him but, in fact, he had obtained those items from "Leisure Time Services" at the Pontiac Correctional Center.

Claimant testified that contrary to the "disciplinary report" of May 4, 1990, there were five stocking caps removed from Claimant's possession instead of three, and that only two were returned.

Again, referring to the letter of Warden Peters dated January 11, 1991, the Claimant's testimony reveals that the Claimant's theory of liability is predicated, at least in part, on the fact that on April 9, 1990, inventory showed certain clothing items (e.g. one pair of gloves) that were not also revealed as being present on the May 20, 1990, inventory. This fact, combined with Claimant's Exhibit 1 (the disciplinary report of May 4, 1990), revealing that one pair of black gloves were removed from Claimant's possession by a correctional officer and "turned over to the Shift Com" helps to establish the State's liability in this case. Again, pointing to the May 4, 1990 disciplinary report, Claimant disputes the content of the report and

states that on May 4, 1990, "all" of his personal property was seized from cell 818 which included items not listed as being removed from the possession of the Claimant on the disciplinary report (Plaintiff's Exhibit 1) including "nylon underwear."

On April 9, 1990, the Claimant was placed in disciplinary segregation at Pontiac Correctional Center. An inmate's access to, or right to, possession of personal property while he is placed in disciplinary segregation is severely limited by the Illinois Department of Corrections. On the date that Claimant was placed in disciplinary segregation at Pontiac Correctional Center, the personal property that he was not entitled to possess while in disciplinary segregation was confiscated. The departmental report, accompanied by the letter of Robert J. Senger to the Honorable Roland W. Burris dated January 22, 1991, contains a "Resident Personal Property Inventory Record" dated 4/9/90 prepared at Pontiac Correctional Center which purports to be a list of the Claimant's resident personal property on the date and time of his placement into disciplinary segregation. In comparing Claimant's "bill of particulars" attached to his complaint to the "resident personal property inventory record" prepared at Pontiac Correctional Center on April 9, 1990, the following is noted:

(1) One silver tone cross on chain is listed in this inventory; Claimant's complaint seeks damages of $300 for one *white gold* cross with matching chain.

(2) The 4/9/90 inventory lists 6 undershorts-briefs and 21 undershorts-boxers. Claimant seeks reimbursement of $64 for eight "nylon underwear."

(3) The inventory lists four sweatshirts and four sweatsuits; Claimant seeks damages of $70 for two zip-up, hooded sweatshirts and two Nike nylon sweatpants.

(4) The 4/9/90 inventory lists 25 audio cassettes; Claimant seeks $30 in damage for the loss of five cassette tapes.

(5) The 4/9/90 inventory lists one pair gloves; Claimant seeks damages of $9 for one pair black gloves.

(6) The 4/9/90 inventory lists no hats or scarves; Claimant seeks $18 in damage for the loss of three black religious caps and one black religious scarf all made of yarn.

(7) The 4/9/90 inventory lists three thermal underwear; Claimant seeks $15 in damage for the loss of two sets of thermal underwear.

(8) The 4/9/90 inventory lists various audio equipment (see third page) but lists no ear plug sets; Claimant seeks damages of $2 for one ear plug set.

(9) The 4/9/90 inventory lists no consumables or food items; Claimant seeks approximately $20 for 10 listed food items on his Bill of Particulars.

(10) The 4/9/90 inventory lists six pillowcases; Claimant seeks indefinite damages for his loss of one navy blue printed pillowcase.

There is no evidence as to which of the items listed in the April 9, 1990 inventory were permitted to remain in the Claimant's possession while in disciplinary segregation status at Pontiac Correctional Center; from the record as a whole, it is reasonable to assume that some, but not all, of Claimant's personal property was permitted to be in his possession while in disciplinary segregation status at Pontiac Correctional Center.

Claimant's Exhibit 1 (disciplinary report of May 4, 1990) reveals that certain items were removed from Claimant's possession as being "unauthorized" at Pontiac Correctional Center. These items consist of the following:

one black pullover sweatshirt
one black zip-up hooded sweatshirt
one black Nike nylon pants
one pair of black gloves
three black stocking caps
one black scarf
one navy blue pillowcase

Of the above-listed items, only the three black stocking caps and the one black scarf can be said to be *not listed* on the April 9, 1990 inventory. As to the remainder of the items removed from Claimant's possession on May 4, 1990, they might very well have been listed on the April 9, 1990 inventory, but with slightly different descriptive adjectives.

Claimant's transfer in disciplinary segregation status to Menard Correctional Center occurred on August 8, 1990. Again, "Resident Personal Property Inventory Records" were prepared at Pontiac Correctional Center (dated August 8, 1990) with subsequent follow-up inventories of personal property being prepared at Pontiac on October 11, 1990, both of which appear as part of the departmental report in this case. Comparing the resident personal property inventories of August 8, 1990 and October 11, 1990 with the personal property inventory of April 9, 1990 and the list of property removed from Claimant's possession on May 4, 1990, certain difficulties arise. For example, as to the property described and itemized in Claimant's bill of particulars, it is noted as follows:

1. The 8/8/90 inventory lists a black cross but not a white gold cross with matching chain.

2. The 8/8/90 inventory lists five undershorts-briefs and four undershorts-boxer, but does not describe "nylon underwear."

3. The 8/8/90 inventory lists two sweatshirts and

again four pairs of sweatshirts but does not describe "zip-up hooded sweatshirts" or "Nike nylon sweatpants."

4. The 8/8/90 inventory lists 22 cassette tapes as opposed to the listing of 25 audio cassette tapes in the 4/9/90 inventory.

5. Due to unclear markings on the 8/8/90 listing, it is uncertain as to whether one pair of gloves is listed or not.

6. The 8/8/90 inventory lists two caps and possibly one hat as compared to no caps or hats listed on the April 9, 1990, inventory.

Again, as at the Pontiac Correctional Center, there is no evidence to establish what personal property of the Claimant, out of the various "transfer" inventories, was allowed to be placed in Claimant's possession while in his disciplinary segregation status while at Menard Correctional Center. Again, it is reasonable to assume that some, but not all, of Claimant's property has been allowed to be in his possession while in disciplinary segregation status. Claimant has not received, and will not receive, unrestricted access to his personal property until he is discharged from disciplinary segregation status. Claimant contends that since there are anomalies between the inventory of April 9, 1990 and the list of unauthorized property removed from his possession on May 4, 1990 at Pontiac Correctional Center as compared to the various "transfer" inventories prepared at the time of and subsequent to his transfer to Menard Correctional Center, then he should be entitled to claim damages for the loss of these items to the extent that it can be argued that certain items do not appear on the transfer inventories which Claimant contends were shown to be in his possession, or among his items of personal property on April 9, 1990.

It is submitted that Claimant's entire case must be

predicated on the assumption that identical, or at least recognizable descriptive adjectives as to miscellaneous items of personal property prepared and written by different correctional officers at different times must exist in the record keeping of the Department of Corrections in order to avoid or defeat the claims of inmates to the loss or destruction of their various miscellaneous items of personal property. For example, Claimant seeks judgment for $300 against Respondent for the loss of "1 silver tone cross on chain" listed in the inventory of 4/9/90. The inventory of 8/8/90 lists "1 black cross." At the hearing, Claimant produced a plastic black cross which Claimant contended could not be the "1 white gold cross with matching chain" for which Claimant seeks damages. Claimant contends that the descriptive adjectives used by the correctional officer preparing the April 9, 1990 inventory (1 silver-tone cross on chain) could not be confused with the black plastic cross demonstrated to the Commissioner at the hearing or the cross described by the correctional officer on August 8, 1990, as "one black cross." Thus, Claimant argues that he should be awarded damages even in the face of the departmental report containing Warden Peters' letter of January 11, 1991, to Rick A. Dunbar which explains in detail that at Pontiac Correctional Center, jewelry is not confiscated when inmates are assigned to segregation units, and further that Pontiac Correctional Center required "Jewelry Retention Statements" for "all jewelry owned by inmates at this facility." Claimant did not tender and Warden Peters explained that Claimant did not have any "Jewelry Retention Statement" for the claimed lost property.

As to the various garments Claimant contends have been lost for which Claimant seeks monetary damages, it is impossible to corroborate Claimant's claims by virtue of the personal property inventory records submitted due to

the probability, and indeed, likelihood, that two separate correctional officers at different times would describe miscellaneous clothing articles using adjectives which could distinguish between phrases such as "black and white pullover sweatshirt" from "2 sweatshirts" or "4-pr. sweatshirts." (See transfer inventory of August 8, 1990.) Further, Claimant seeks to recover damages for black religious caps and scarves made of yarn. Yet, the transfer inventory of August 8, 1990 reflects "2 caps" and "2-pair homemade knits." The officer at Pontiac Correctional Center removing unauthorized property from Claimant's possession on May 4, 1990 described property removed from Claimant's possession including "3 black stocking caps" and "1 black scarf." Claimant wore a black stocking cap to the hearing. There is no evidence in this record to support Claimant's contentions regarding the consumable items listed on his bill of particulars.

Finally, with respect to the navy blue pillowcase, it should be noted that the transfer inventory of August 8, 1990 lists "2 pillowcases." It is impossible to determine that Claimant has been deprived of the navy blue printed pillowcases, or any pillowcase at all.

A complete review of the departmental report and the Claimant's testimony at the hearing reveals that Claimant's case is predicated almost entirely on the assumption that the use of descriptive adjectives by different correctional officers at different times in respect to widely varied miscellaneous personal property, must always be of sufficient similarity or context to enable persons upon third party review to determine the exact identity of such items of personal property. No evidence was adduced by Claimant from which this Court can conclude, that it is either possible, practical, or feasible to require this standard of accuracy from employees of the

Illinois Department of Corrections in preparing resident personal property inventory records.

Indeed, in the final analysis, Claimant has failed to corroborate by any convincing evidence whatsoever, that the items for which he seeks monetary damages are not indeed, in storage awaiting his release from disciplinary segregation status; indeed, there is some indication in the record from an analysis of the various personal property inventory records, that such items are, in fact, in storage awaiting Claimant's change of status. The items were not subpoenaed to the hearing by Claimant for comparison.

In a bailment case, a claimant must prove by a preponderance of the evidence that specific property of claimant has come into the exclusive possession of the State and has not been returned before a presumption of negligence is established that Respondent must rebut. (*Doubling v. State* (1976), 32 Ill. Ct. Cl. 1; *Crossland v. State* (1988), 41 Ill. Ct. Cl. 180.) In this case, that evidence is lacking as the Claimant has failed to meet his burden of proof.

For the foregoing reasons, it is ordered that this claim be and hereby is denied.

## ORDER

FREDERICK, J.

This cause coming on Claimant's motion for reconsideration of opinion filed December 2, 1993, and the Court having reviewed the entire case, and the Court being fully advised in the premises, wherefore, it is ordered that the motion for reconsideration is denied.